**Lauren C. Regan**, OSB # 970878
Email: lregan@cldc.org
**Marianne Dugan**, OSB # 932563
Email:   mdugan@cldc.org
**Cooper Brinson**, OSB # 153166
Email: cbrinson@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1430 Willamette Street, #359
Eugene, OR   97402
Telephone:   541.687.9180
Fax: 541.804.7391

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| HENRY HOUSTON, | Case No. 6:20-cv-1180 |
| Plaintiff, | **COMPLAINT** |
| v. | **Civil Rights -- 42 U.S.C. § 1983 - 1st, 4th and 14th Amendments - Curfew; Excessive Force/Deliberate Indifference (Impact and Gas Munitions) and First Amendment Retaliation** |
| CITY OF EUGENE, a municipal corporation; SARAH MEDARY, in her individual capacity; and DOES 1-5 in their individual capacities, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff HENRY HOUSTON, by and through his attorneys, CIVIL LIBERTIES

DEFENSE CENTER, for his Complaint against defendants, alleges:

## I.  INTRODUCTION

1.      This is a civil rights action arising under Title 42 of the United States Code,

Section 1983. Mr. Houston brings this action for compensatory damages, including punitive

damages against the individual defendants, for violating the civil rights guaranteed to him

through the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

2.      On May 25, 2020, George Floyd, an African-American, was killed by a Minneapolis police officer, Derek Chauvin, who knelt on Mr. Floyd's neck for about eight minutes and forty-six seconds. During that time, at least four other officers stood around and watched as Mr. Floyd begged for his life and cried out for his mom. Mr. Floyd's last words were, "please, please, please, I can't breathe." These last words have been uttered by at least 70 other people that have died at the hands of law enforcement.[1]

3.      Several weeks before Mr. Floyd was killed by police, Breonna Taylor, a Louisville, Kentucky EMT, also African-American, was shot dead by police who broke into her home, in plain clothes, to execute a no-knock warrant. Police claimed they were looking for two people, but those two people were already in police custody when police executed the warrant and shot Ms. Taylor eight times.[2]

4.      The killing of Mr. Floyd and Ms. Taylor unleashed a torrent of anger and frustration from people in the U.S. and across the world. Millions have protested and demonstrated, calling for an end to white supremacy and the legal, social, political, and economic institutions that uphold and benefit from systemic racism.

5.      In the U.S., demonstrations have occurred in every state, across multiple weeks. Many demonstrators were attacked by police using a variety of implements, including tear gas, pepper spray/pepper balls, rubber bullets, and other projectiles.

---

[1] https://www.nytimes.com/interactive/2020/06/28/us/i-cant-breathe-police-arrest.html

[2] https://www.nytimes.com/article/breonna-taylor-police.html

6.      Police responding to these demonstrations have also attacked journalists.[3] According to the U.S. Press Freedom Tracker, there have been over 470 reported aggressions (including arrests, physical attacks involving chemical or impact munitions, and other harms) against journalists in over 60 U.S. cities during the demonstrations and protests that have occurred in the wake of the deaths of Floyd, Taylor, and so many more.[4]

7.      Like most cities in the U.S., Eugene, Oregon, was home to several protests and demonstrations in the days after Mr. Floyd was killed. In response to those gatherings, the Eugene Police Department (EPD) used indiscriminate, brutal, and excessive force against Eugene residents, protestors, journalists, and others. These overt efforts to intimidate the public and suppress reporting on police brutality are part of a broader effort to quell free speech and other constitutional rights.

8.      The City of Eugene also responded to the protests by implementing a series of unconstitutional curfews. The conduct of protestors did not justify such a sweeping restriction on free speech and travel. These curfews provided a pretext for law enforcement to maraud around the City in trucks and armored vehicles, shooting chemical and impact munitions at protestors, journalists, passersby, and residences.

9.      While these curfews included an exemption for members of the press, defendants ignored this exemption.

10.     Henry Houston was a journalist working in Eugene on May 31, 2020. Even after identifying himself as press several times to law enforcement, defendant Doe members of the

---

[3] https://theintercept.com/2020/06/04/journalists-attacked-police-george-floyd-protests/

[4] https://pressfreedomtracker.us/george-floyd-protests/

Eugene Police Department shot Mr. Houston with impact and chemical munitions from the turret of their militarized police vehicle, causing injuries to Mr. Houston and violating his rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

11.    As a member of the press, plaintiff Houston has the right to observe major events and recount them to the public. This essential role is central to the foundation of our democracy. Retaliation by police against neutral parties such as legal observers and journalists is reminiscent of oppressive regimes elsewhere in the world.[5] The defendants' rampage and use of unconstitutional and excessive force against the community, particularly members of the media, has no place in the City of Eugene.

12.    Defendants' actions are not constitutional because they were not narrowly tailored to a compelling government objective and left no sufficient alternatives for members of the press such as plaintiff Houston. The curfews and indiscriminate use of force are not designed to achieve a legitimate government interest; but rather, serve to prevent press from exposing police brutality and are intended to chill lawful rights and scare the public into submission. Defendants cannot justify an attack against reporters because they are not a threat to public safety, police officers, or private property. The indiscriminate use of "less lethal" weapons on protestors and journalists makes accurate and fair reporting nearly impossible. The result was that plaintiff Houston was unable to continue documenting police violence.

---

[5] *See e.g. China Announces New Retaliation Against U.S. News Outlets*, N.Y. Times (July 1, 2020), https://www.nytimes.com/2020/07/01/business/media/china-journalists-crackdown.html

PAGE  4  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

## II. JURISDICTION AND VENUE

13.     This civil action arises under the Constitution and laws of the United States and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1342(a).

14.     Venue is properly vested in the Court pursuant to 28 U.S.C. § 1391(b) because the actions giving rise to this complaint took place in the City of Eugene, Oregon, which is in this District, and defendants are subject to personal jurisdiction in this District.

## III. PARTIES

15.     Plaintiff Henry Houston is a journalist employed by the Eugene Weekly and is and at all material times was a resident of Lane County.

16.     Defendant City of Eugene is a political subdivision of the State of Oregon. The Eugene Police Department is a department or division of the City. On information and belief, each person who fired chemical or impact munitions on May 31, 2020, was an agent or employee of the City of Eugene. On information and belief, each decision to fire chemical or impact munitions at plaintiff or otherwise enforce the curfew in effect on May 31 was the result of a policy decision of the City of Eugene.

17.     Defendant Sarah Medary is the City Manager for the City of Eugene, and at the time of the events alleged herein, was *Pro Tem* City Manager. As affirmed in a City of Eugene press release, in consultation with the Eugene City Council, Medary made the final decision to declare a state of emergency and put a curfew in place with input from our Police Chief and staff in the field.

18.     Defendants Does 1-5, inclusive, are unidentified sworn law enforcement officers who committed the acts and omissions set forth in this Complaint, or supervised or ratified those acts and omissions, as agents or employees of defendant City of Eugene. Plaintiff is ignorant of

PAGE  5  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

the true names and/or capacities of defendants sued herein as Does 1 through 5, and therefore

initiates suit against said defendants by such fictitious names. Plaintiff will amend this complaint

to allege Does' true names and capacities when ascertained. Plaintiff is informed and believes

and, therefore, alleges that each of the Doe defendants is legally responsible and liable for the

incidents, injuries, and damages herein set forth, and that each of said defendants proximately

caused said incidents, injuries, and damages by reason of their negligence, breach of duty,

negligent supervision, management, or control, violation of constitutional and legal rights, or by

reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether

severally or jointly, or whether based upon agency, employment, or control or upon any other act

or omission. Plaintiff will ask leave to amend this complaint to insert further allegations when

such facts are ascertained.

19.     In doing the acts and/or omissions alleged herein, each defendant acted within the

course and scope of their employment.

20.     In doing the acts and/or omissions alleged herein, each defendant acted under

color of authority and/or under color of law.

21.     In doing the acts and/or omissions alleged herein, each defendant acted as the

agent, servant, or employee, and/or in concert with, each of the other defendants.

### IV. FACTUAL ALLEGATIONS

22.     On May 29, 2020, protesters gathered throughout the City of Eugene in response

to the killings of George Floyd and Breonna Taylor. News of these most recent victims of police

brutality and murder have sparked protests in every major city across the nation.

PAGE  6  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

23.     During the evening of May 29 and the early morning hours of May 30, a small number of unknown individuals damaged property at or near West 7th Avenue and Washington Street in Eugene.

24.     The City of Eugene and EPD pointed to the incidents of property destruction that occurred on May 29th and the early hours of May 30th, 2020, to justify six unconstitutional curfews -- three curfews with limited application and three curfews that applied city-wide -- and the use of various chemical and impact munitions against the public, including plaintiff.

25.     Upon information and belief, on May 31, 2020, law enforcement in Eugene, including Doe defendants, also – like law enforcement around the country -- targeted journalists, including plaintiff, with chemical and impact munitions and threats of violence after journalists clearly identified themselves and were otherwise clearly engaged in their journalistic/reporting duties.

26.     On May 31, 2020, the City of Eugene "enacted a temporary nighttime curfew in downtown Eugene from 9:00 p.m. . . . through 6:00 a.m. June 1." "The curfew appli[ed] to the area from High Street to Monroe Street and from 14th Avenue to 4th Avenue." EPD's Facebook page announced this curfew shortly after 6:30 pm. on May 31.

27.     The curfew was extended to apply citywide at 11:00 p.m. EPD's Facebook page announced the city-wide curfew at 11:08 p.m. Many people in Eugene did not receive any notice of the curfews.

28.     The curfew did "not apply to clearly identifiable and credentialed media, people seeking emergency care, fleeing dangerous circumstances, sheltering in place, traveling to and from employment or making commercial deliveries."

PAGE 7  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

29.     Violating the city's curfew order was a misdemeanor offense and was punishable by a fine up to $500 or confinement in jail up to 100 days, or both fine and imprisonment.

30.     During the course of their marauding rampage on May 31, 2020, defendants attacked Mr. Houston by firing chemical and impact munitions at Mr. Houston. Mr. Houston was exempt from the curfew, was clearly engaged in his journalistic duties, and had identified himself to law enforcement several times prior to being attacked.

31.     On May 31, 2020 at around 11:10 p.m., Mr. Houston was at or near a parking lot adjacent to the intersection of East 14th Avenue and Alder Street in Eugene.

32.     Mr. Houston was observing police and protestors, wearing his press badge, and clearly engaged in journalistic duties.

33.     Prior to being attacked in the parking lot, Mr. Houston identified himself to officers as press on at least three occasions. Mr. Houston was not walking with protestors and kept ample distance between himself and protestors. Mr. Houston was also not dressed in the typical all-black garb of protestors. He was wearing shorts, a red t-shirt, and white shoes.

34.     The first instance Mr. Houston identified himself to law enforcement as press occurred on Patterson Street when Mr. Houston was walking on a sidewalk. EPD officers in an SUV pulled up to Mr. Houston and shined a bright light at Mr. Houston. Mr. Houston then held up his press badge and yelled out "media."

35.     Later, while walking on the sidewalk of East 11th Avenue, several Eugene police officers traveling in a "community service" police truck, pulled over, exited the vehicle and ran toward protestors.

36.     One of the officers ordered Mr. Houston to leave the area. Mr. Houston responded by stating that he was media and was exempt from the curfew.

37.     Video taken by Register Guard journalists Adam Duvernay and Dana Sparks captured part of this incident. During the Register Guard video, Doe defendant members of law enforcement are seen driving around in a large armored vehicle, sometimes referred to as a "bearcat." One Doe defendant is heard over a loudspeaker stating: "Eugene city-wide curfew is in effect. Return to your home now or you could be subject to arrest, chemical munitions, or impact munitions."[6]

38.     Doe defendants followed protestors and members of the media, including Mr. Houston, Duvernay, and Sparks. A Doe defendant is heard telling the reporters to "roll out." Mr. Duvernay informed defendant Doe that "we're reporters." Doe responded, "It doesn't matter." Mr. Duvernay replied, "Yes, it does."[7]

39.     Around 11:10 p.m. Doe defendants and their "bearcat" armored vehicle entered a parking lot near 14th Avenue and Alder Street. The defendants then ordered protestors to disperse and immediately began indiscriminately firing projectiles, including tear gas, pepper balls, and "long-range batons" or "foam batons" at people in the vicinity of the "bearcat" vehicle.

40.     As the crowd dispersed, Mr. Houston -- who was standing alone in the parking lot, separated from protesters -- again identified himself, yelling "I am a journalist." Immediately after he identified himself, defendant Doe(s) fired chemical and impact munitions directly at Mr. Houston from the turret of their armored vehicle. Defendant Doe was about 25 feet away from Mr. Houston when s/he fired the projectile(s) at Mr. Houston:

---

[6] https://www.youtube.com/watch?v=O9VaCnnUeHI

[7] *Id.*



41.    This still from the Register-Guard video shows the moment defendant Does shot chemical and impact munitions at Mr. Houston. Mr. Houston is seen crouching in the midst of the sparks generated from the munitions.

42.    Immediately after Mr. Houston was hit by the projectiles, he again identified himself as a journalist and held up his press credentials. In response to Mr. Houston identifying himself as a credentialed journalist, defendant Does laughed and fired additional projectiles at Mr. Houston. Defendants knew Mr. Houston was a journalist because Houston clearly identified himself and was obviously engaged in his journalistic duties.

43.    Defendants made no attempt to comply with the journalist exemption to the curfew order and, instead, decided to ignore not only the curfew exemption, but the fundamental constitutional rights of the press to report on issues of public concern. The comment from defendant Doe that "it doesn't matter" that Mr. Houston, Duvernay, and Sparks are press, and the subsequent laughter of defendant Does when they shot Mr. Houston shows that defendants were not only deliberately indifferent to the rights of the press, including Mr. Houston, but were also deeply contemptuous of anyone exercising such rights.

PAGE  10  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

44.    After being attacked by Does, Mr. Houston immediately left the scene because he was in pain from both the impact of the projectiles and the chemical irritants from the tear gas and pepper balls. He feared further violence from defendants because it was clear to him that EPD did not care about press freedom.

45.    In response to the attack on Mr. Houston, an EPD spokesperson wrote the following: "Henry, while I feel it unfortunate that you have experienced this, there is no way to discern whether or not someone is credentialed media if they are embedded or mixed in with a large group violating curfew. If you were in an area where people were subject to this, you are at potential risk and assume any risks incurred by doing so."[8]

46.    Eugene Chief of Police Chris Skinner later apologized to Mr. Houston and stated "that incident should have never happened."[9] While this apology was admirable, it does not remedy the violations of Mr. Houston's constitutional rights nor the chilling effect that such police actions have on the free press.

## FIRST CAUSE OF ACTION

### FIRST AMENDMENT VIOLATION - CURFEW

### COUNT 1
### MUNICIPAL AND SUPERVISORY LIABILITY (*Monell* - 42 U.S.C. § 1983)
### Against the City of Eugene

47.    Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

---

[8] https://twitter.com/EugWklyCamilla/status/1267480183402979328

[9] https://www.registerguard.com/news/20200608/in-thick-of-it-journalists-are-caught-in-protest-crossfires-locally-nationally

48.     On May 31, 2020, Mr. Houston was engaged in constitutionally protected acts of speech and expressive conduct, namely, journalism.

49.     Despite the curfew orders purporting to allow an exception for journalists, the City of Eugene has a policy, practice, or custom of using curfews to prohibit and prevent mass protests and other activity, such as journalism, protected by the First Amendment.

50.     Mr. Houston did not present any threat to public safety, and the defendants' use of curfews to prohibit or intimidate members of press from engaging in their First Amendment right to report on issues of public concern in a public place violated Mr. Houston's rights under the First Amendment.

51.     Plaintiff was present at the parking lot near East 14th Avenue and Alder Street to observe, document, and report on the protest, including the police response to the protest. He did not commit any crime and did not pose any threat to defendants when defendants attacked him.

52.     Defendants' acts would chill a reasonable person from continuing to engage in constitutionally protected activity, such as journalism. Defendants' acts did, in fact, chill plaintiff from engaging in journalism. Mr. Houston refrained from covering protests from June 6 through June 10, due to his reasonable fear that he would be shot at or otherwise subjected to further violence from defendants.

53.     Each curfew was an unreasonable time, place, and manner restriction on plaintiff's First Amendment rights.

54.     As noted, the curfews lacked constitutionally sufficient notice to those subject to or impacted by the curfews, including plaintiff.

55.     Plaintiff challenges the two curfews implemented by defendants on May 31: the initial curfew that was in effect from 9:00 p.m. May 31 to 6:00 a.m. June 1 and applied "to the

PAGE  12  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

area from High Street to Monroe Street and from 14th Avenue to 4th Avenue" and the extension

of that curfew that applied "citywide at 11:00 p.m."[10]

56.    Defendant Medary implemented and/or signed each of the curfews at issue.

57.    The curfew orders were not narrowly tailored to serve any legitimate or

compelling interest and allowed, encouraged, or ratified defendant's violent enforcement of the

unconstitutional curfews.

58.    Each of the curfews prohibited and suppressed far more speech, assembly, and

other protected First Amendment activity than necessary.

59.    Each curfew, as a matter of policy or practice, was a prior restraint on free speech

activity and assembly.

60.    Each curfew, as a matter of policy or practice, lacked adequate notice as to both

timing and method of notice.

61.    Any alleged property destruction that occurred on May 29, 2020, did not justify

the near-total prohibition on public activity or the failure to provide adequate safeguards for

journalists to do their jobs without being subject to chemical and impact munitions.

62.    "Banning or postponing legitimate expressive activity because other First

Amendment activity regarding the same subject has resulted in violence deprives citizens of their

right to demonstrate in a timely and effective fashion." *Collins v. Jordan*, 110 F.3d 1363, 1371-

72 (9th Cir. 1996).

---

[10] https://www.eugene-or.gov/civicalerts.aspx?aid=4397

PAGE  13  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

63.     The City defendant could have used other significantly less-restrictive means of addressing any forms of property destruction that occurred during the protests two days prior to the incident involving Mr. Houston.

64.     The City defendant also could have ensured that an adequate policy or practice was in place to ensure that law enforcement respected and complied with the journalist exception of the curfew.

*65*.     The City defendant could have enforced "other laws at [their] disposal that would allow [them] to achieve [their] stated interests," including the criminal laws prohibiting damage to property. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011).

66.     The EPD curfews are similar to the First Amendment limitations addressed by the Supreme Court in *Thompson v. W. States Med. Ctr*, 535 U.S. 357, 373, 122 S. Ct. 1497, 1507, (2002), in which the Court stated:   "If the First Amendment means anything, it means that regulating speech must be a last -- not first -- resort. Yet here it seems to have been the first strategy the Government thought to try."

67.     While the text of the curfews purportedly allowed journalists to be exempt from the curfew, the policy, practice, or custom of the City defendant was to ignore the press exception, as noted by the EPD spokesperson's statement and the Doe defendants' laughing and statements that "it doesn't matter."

68.     The City defendant failed to train and supervise its employees and agents, including the Doe defendants and defendant Medary, responsible for creating, implementing, and enforcing the curfews. These failures resulted in violations of Mr. Houston's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

PAGE  14  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

69.     The City defendant's policies, practices, and customs, as well as the City defendant's failure to train and supervise employees and agents, regarding the creation, implementation, and enforcement of the curfews amounts to deliberate indifference to plaintiff's rights.

70.     The City defendant's unconstitutional curfews caused plaintiff to suffer noneconomic damages.

71.     Plaintiff was required to hire attorneys to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT 2

### (Against Defendant Medary and Doe Defendants)

72.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

73.     Enforcement of each of the curfews enacted, signed, implemented, and enforced by defendants violated the First Amendment rights of plaintiff.

74.     The individual defendants violated rights held by plaintiff which were clearly established, and no reasonable person similarly situated to defendants could have believed that such conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

75.     The individual defendants' signing, implementation, and enforcement of the curfews caused plaintiff to suffer noneconomic damages.

76.     The individual defendants' actions were recklessly indifferent to plaintiff's civil rights.   As such, punitive damages should be awarded in a sum to be determined at trial.

77.     Plaintiff was required to hire attorneys to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### (Fourth and Fourteenth Amendment – Excessive Force and Deliberate Indifference to Health and Safety, 42 U.S.C. § 1983)

### Count 1
### Monell Claim Against City Defendant - Unlawful Practice or Policy Allowing Indiscriminate Use of Force as a Tactic to Disperse Crowds in Violation of First and Fourth Amendments

78.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

79.     The City of Eugene has an official policy, practice, or custom allowing or encouraging its Police Department to use chemical and impact munitions against crowds or protestors if it determines that the crowd or protestors create a "civil disturbance" or when a person or group is deemed to be in violation of a curfew order issued by the City.

80.     This policy permits law enforcement to use indiscriminate force against a crowd of people or individuals in violation of the Fourth and Fourteenth Amendment.

81.     Tear gas and other chemical munitions, for example, are necessarily indiscriminate in that they affect all people in a given area who are exposed to the airborne substances.

82.     It also permits law enforcement to use chemical and impact munitions against journalists as there is a practice to ignore the explicit press exemption of a curfew order.

83.     Even if the policies regarding civil disturbances or curfews are constitutional, the actual practice and custom of the City and the Eugene Police Department is to allow the indiscriminate use of chemical and impact munitions against a crowd or person even when the

PAGE 16 - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

crowd (or a majority of the crowd) or person have not committed a crime and do not pose a

physical threat to law enforcement or others.

84.     On May 31, 2020, EPD used chemical and impact munitions on protestors as well

as passersby and journalists.

85.     The authorization to use chemical and impact munitions on May 31 was part of a

decision-making process "communicated up through chain of command" from officers in the

field.[11]

86.     The City, acting pursuant to the policies, practices, or customs noted above,

unlawfully used chemical and impact munitions against plaintiff and others.

87.     Because of the City's acts and omissions, plaintiff suffered both excessive force

and deliberate indifference to his health and safety.

88.     Defendant City of Eugene has failed to properly train its officers, agents, and

employees in how to address the rights of journalists and others during protests, and has failed to

properly train officers to use an appropriate level of force; and/or has allowed numerous other

similar incidents; and/or has a policy or practice of allowing that level of force; and/or has

encouraged or acquiesced in this unlawful behavior, and/or tacitly encouraged or acquiesced in it

by failing to train, supervise, or discipline their officers. These behaviors evince deliberate

indifference to plaintiff's constitutional rights, sufficient to support a verdict that those policies,

customs, or practices caused the use of excessive force against plaintiff.

---

[11] https://www.oregonlive.com/crime/2020/06/eugene-police-chief-pledges-reaffirmation-to-police-reform-addresses-use-of-surveillance-drone-riot-control-measures-after-week-of-protests-began-with-rioting-looting.html

PAGE  17  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

89.     Defendant City is directly liable to plaintiff for its unconstitutional policies, customs, or practices; and/or for failing to properly train its officers resulting in injuries to Mr. Houston and his rights under the First Amendment.

90.     As a direct and proximate cause of the actions described herein, plaintiff sustained noneconomic damages, including physical pain and suffering; loss of liberty; and damage and/or loss of personal property, all to an amount to be ascertained according to proof at trial. As a direct and proximate result of the actions and omissions described in this complaint, plaintiff incurred the damages alleged herein, and was required to hire attorneys to represent him in this matter and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## Count 2

## Against Doe Defendants

91.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

92.     By their actions as described herein, the Doe defendant members of law enforcement, under color of statute, ordinance, regulation, custom, or order, subjected plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution; namely, plaintiff's right to be free from unreasonable seizure by the use of excessive force and deliberate indifference to his health and safety.

93.     Defendant Does violated rights held by plaintiff which were clearly established, and no reasonable official similarly situated as Doe defendants could have believed that their conduct was lawful or within the bounds of reasonable discretion. Defendant Doe members of law enforcement thus lack qualified or statutory immunity from suit or liability.

PAGE 18 - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)

94.     As a direct and proximate cause of the actions described herein, plaintiff sustained non-economic damages, including physical pain and suffering; loss of liberty; and damage and/or loss of personal property, all to an amount to be ascertained according to proof at trial.

95.     The actions of the Doe defendants, as described in this Complaint, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted against plaintiff. As a result of this intentional conduct, plaintiff is entitled to punitive damages against defendant Does, in an amount sufficient to punish them and to deter others from like conduct.

96.     Plaintiff was required to hire attorneys to represent him in this matter and is thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

**(First, Fourth, and Fourteenth Amendments to the U.S. Constitution –
Retaliation, 42 U.S.C. § 1983 against Doe Defendants)**

97.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

98.     Plaintiff was engaged in constitutionally protected activity when the Doe defendant, acting or purporting to act in the performance of their official duties as law enforcement officers and pursuant to the orders and policies of the City defendant and defendant Medary, caused plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in that activity, and defendants' adverse actions, including the implementation of the curfews and the violence used to enforce the curfews, were substantially motivated by a desire to retaliate against plaintiff's exercise of constitutionally-protected conduct as well as a desire to retaliate against plaintiff for the actions of others.

99.    Defendants' retaliation was motivated by evil motive or intent, involved reckless or callous indifference to plaintiff's First, Fourth, and Fourteenth Amendment rights secured by the United States Constitution, and/or was done so wantonly or oppressively.

100.    Statements of defendant Does such as "it doesn't matter" (in response to press identifying themselves), laughter of defendant Does after shooting plaintiff with chemical and impact munitions, and the general brutality and violence employed against plaintiff after plaintiff identified himself several times as press indicates that defendant Does retaliated against plaintiff for plaintiff's exercise of well-established rights under the First Amendment.

101.    As a direct and proximate result of defendants' unconstitutional actions, plaintiff suffered injuries entitling him to recover noneconomic and punitive damages.

102.    Plaintiff was required to hire attorneys to represent him in this matter and is thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## **RELIEF REQUESTED**

Plaintiff respectfully requests that this Court:

a)    Exercise jurisdiction over plaintiff's claims and grant him a jury trial;

b)    Award plaintiff non-economic damages in an amount to be ascertained according to proof;

c)    Award plaintiff punitive damages against the Doe defendants and defendant Medary in an amount sufficient to punish them and deter others from like conduct;

d)    Award plaintiff's reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988; and

e)      Grant plaintiff such other and further relief as this Court deems just and

appropriate (including, for example, declaratory and injunctive relief against the City's policies if

the City resumes the use of the curfews and "crowd control" munitions described herein).

DATED:   July 21, 2020.

   /s/   Lauren Regan
Lauren Regan, OSB # 970878
Email: lregan@cldc.org

   /s/   Marianne Dugan
Marianne Dugan, OSB # 932563
Email:   mdugan@cldc.org

   /s/ Cooper Brinson
Cooper Brinson, OSB # 153166
Email: cbrinson@cldc.org

CIVIL LIBERTIES DEFENSE CENTER
1430 Willamette Street, #359
Eugene, OR   97402
Telephone:   541.687.9180
Fax: 541.804.7391

PAGE  21  - COMPLAINT (CIVIL RIGHTS - 42 U.S.C. 1983)